IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KANDY LINTHICUM, | : | Case No. 1:02-cv-480 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | |
| | : | |
| P.O. ROBERT JOHNSON *et al.*, | : | ORDER DENYING DEFENDANT |
| | : | CITY OF CINCINNATI'S MOTION |
| Defendants. | : | FOR RECONSIDERATION |

This matter comes before the Court on Defendant City of Cincinnati's ("City's") Motion for Reconsideration of the Court's Order Denying the City's Motion for Summary Judgment (docs. ##s 58, 60).  (Doc. #64.)

In its Motion, the City challenges the Court's determination that Plaintiff Kandy Linthicum has established a genuine dispute of material fact as to whether the City had an unofficial policy or custom of "deliberate indifference" to disciplining police that contributed to Linthicum's alleged assault by Cincinnati police officers Robert Kidd and Robert Johnson.[1] (Doc. #64 at 1; see also generally Opinion on Summary Judgment, doc. #60 at 54-68, 71.)  In making this determination, the Court cited record evidence indicating that at least nineteen Cincinnati police officers were terminated for misconduct between 1994 and 2004 only to be reinstated by independent arbitrators, and that the City elected to appeal only one of those reinstatements to a court of law.  (See, e.g., doc. #60 at 66-67.)  The Court concluded that a

---

[1] Absent this finding, the City could not be held liable for Kidd and Johnson's alleged assault pursuant to 42 U.S.C. § 1983.  (See doc. #60 at 55-56, 71.)

reasonable jury presented with these appeals figures and other record facts "could, *in reviewing the evidence in the light most favorable to Linthicum*, conclude that the City has engaged in an unofficial custom or policy of 'deliberate indifference' to police discipline" sufficient to subject the City to liability under 42 U.S.C. § 1983.  (Id. at 67-68 (emphasis added).)

The City argues that the Court's conclusion was erroneous for at least two reasons.  First, the City submits that the evidence of terminations and reinstatements submitted on summary judgment was "not probative of a clear and persistent pattern of illegal activity" in a force of "over 1000 officers."  (Doc. #64 at 4.)  For support, the City attaches a new affidavit describing the grounds for termination for each police officer dismissal between 1994 and 2001 and indicating that "only about half of the 18 officers dismissed from 1997-2001" were reinstated in arbitration.  (Id.)  The City further contends that because Ohio law circumscribes review of arbitration decisions and generally bars bad-faith appeals, it was "unreasonable to infer that the City knowingly disregarded [any] real opportunities to 'override'" arbitrators – and thus keep Cincinnati police officers terminated for their misconduct from returning to the force – by neglecting to appeal the vast majority of reinstatements.  (Id.)

Federal Rule 60(b) authorizes relief from any final order granted more than 10 days but less than a year ago on grounds of (1) "mistake, inadvertence, surprise, or excusable neglect"; (2) "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)"; (3) "fraud"; a showing that a judgment (4) is "void," or (5) "has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application"; or (6) "any other reason justifying relief from the operation of the

judgment." Fed. R. Civ. P. 60(b).

The Court has reconsidered its summary judgment opinion in light of the authorities and facts cited in the City's Motion, and finds no grounds to upset its prior conclusions. In asserting that the appeals statistics are "not probative" of any "deliberate indifference" to police discipline, the City endeavors to reargue points already considered by the Court. As the Court reasoned in its summary judgment opinion,

> [D]isciplinary statistics are most probative when presented alongside "comparative data" from "like-sized cities or like-sized police forces," rather than in isolation. Indeed, there is presumably other data from *within* Cincinnati – such as the number of terminations (if any) that were *upheld* on appeal between 1994 and November 2001, or the total number of disciplinary cases and terminations during that period that stemmed from officers' unconstitutional and/or sexual mistreatment of civilians – that would significantly aid a jury tasked with weighing the ultimate probity of Linthicum's cited figures. This contextual material is not presently before the Court. Nevertheless, it appears that a reasonable jury armed only with the present statistics and other cited evidence could, in reviewing the evidence in the light most favorable to Linthicum, conclude that the City has engaged in an unofficial custom or policy of "deliberate indifference" to police discipline.

(Doc. #60 at 67 (internal citations and footnotes omitted).)

The City's supplemental evidence regarding the grounds for the cited terminations, and the proportion of those terminations appealed, does not alter this analysis. While orders may be reconsidered in light of newly discovered evidence, see Fed. R. Civ. P. 60(b)(2), the City does not contend – nor does it appear likely – that these supplemental facts were not available to it when it submitted its briefs on summary judgment. In any event, the Court's summary judgment opinion expressly acknowledged the likelihood that "the majority of the nineteen terminations" cited by Linthicum "did not involve sexual misconduct or other violations of citizens' rights, and that at least a few occurred after Linthicum's alleged November 2001 assault (and thus could not

3

have contributed directly to it.)" (Doc. #60 at 67 n. 68.) And while the Court ruled without the benefit of comparative data on the proportion of terminations appealed to arbitrators, the City's submission that roughly half of all terminated officers did not obtain arbitrated reinstatements would not – in the Court's judgment – prevent a reasonable jury from concluding that the City exhibited "deliberate indifference" to discipline by not even *attempting* to reverse, in court appeals, the vast majority of successful arbitrations.

The City's assertions about the limited scope of review on appeals from arbitration are equally unavailing. While the City attacks as "overstated" the premise that the City neglected opportunities to appeal the reinstatements of a number of terminated police officers, nothing in its Motion contradicts that premise. (See doc. #60 at 65.) The City does not contend that Ohio courts lack the *authority* to reverse arbitrator's decisions reinstating police officers terminated for their misconduct. Rather, it submits that such reversals are proper under Ohio law only where the arbitrator's decisions are revealed to be either unlawful or "arbitrary and capricious." (Doc. #64 at 2-3.) Even assuming the only available review would in fact be so circumscribed, the City has not shown – nor does the Court have any reason to assume – that the reinstatements at issue could not have been challenged, in good faith, as "arbitrary and capricious."[2]

For the reasons above, the City's Motion for Reconsideration (doc. # 64) is **DENIED**.

---

[2] Indeed, in its opening brief on summary judgment, the City complained that Kidd's and Johnson's arbitrators had relied on "excessively narrow interpretation[s] of the City's Disciplinary Policy" to reinstate the officers. (See, e.g., doc. #46 at 18.) While the circumstances of Kidd's and Johnson's reinstatements are not dispositive for purposes of the "unofficial policy or custom" analysis, see doc. #60 at 58-59, they at least provide some circumstantial evidence that arbitrators' applications of the disciplinary policy can be at great odds with the City's own applications.

IT IS SO ORDERED.

                                               s/Susan J. Dlott
                                              Susan J. Dlott
                                              United States District Judge